MATTER OF A—

In VISA PETITION Proceedings

A-11959587

*Decided by Board June 1, 1962*

Visa petition—Section 205(c), 1952 act, as amended—Effect of revocation of visa petition based on sham marriage.

Visa petition filed by beneficiary's first wife in 1959 accorded him nonquota status as the spouse of a United States citizen. In 1961, approval of the petition was revoked, and on appeal to the Board it was established that the marriage was contracted for the purpose of evading the immigration laws. Present petition was filed on behalf of beneficiary by his second wife, a United States citizen. In connection with the applicability of section 205(c), as amended by section 10 of the Act of September 26, 1961, it was argued that beneficiary had not previously been accorded nonquota status since approval of the prior visa petition had been revoked.

*Held*: Nonquota status or third preference quota status was conferred upon the beneficiary when the visa petition was approved; subsequent revocation is unimportant. It having been established in 1961 that the marriage was not *bona fide* and was entered into for the purpose of evading the immigration laws, the provisions of section 10 of P. L. 87-301 are applicable to the instant petition and it must be denied.

**BEFORE THE BOARD**

DISCUSSION: The case comes forward on appeal from the order of the District Director, Los Angeles District, dated February 5, 1962, denying the visa petition for the reason that the alien beneficiary previously was accorded a nonquota status under section 101(a)(27)(A) of the Immigration and Nationality Act as the spouse of a citizen of the United States on the basis of a marriage, which the Attorney General has determined was entered into for the purpose of evading the immigration laws; when these circumstances exist, the law prohibits the approval of the petition for such alien.

The petitioner, a native-born citizen of the United States, 14 years old, female, seeks nonquota status on behalf of the alien beneficiary, a native and citizen of Portugal, 21 years old. The parties were married at Saint George, Utah, on December 23, 1961. The petitioner was never married previously, while the beneficiary was mar-

705

ried once previously, on September 3, 1959, such marriage being terminated by a decree of annulment obtained by the beneficiary on December 21, 1961, in the Eighth Judicial District Court of the State of Nevada in and for the County of Clark, City of Las Vegas.

The record shows that the alien last entered the United States on January 13, 1959, as a visitor. He was previously the beneficiary of a prior petition filed by his first wife on December 7, 1959, which was approved on January 26, 1960, according the beneficiary non-quota status as the spouse of a United States citizen. The parties were married at Las Vegas, Nevada, on September 3, 1959, the petitioner being then 41 years of age, the beneficiary 19. On January 13, 1961, the petitioner was notified that pursuant to 8 CFR 206.2 proceedings were being instituted for revocation of the approval of the visa petition on the ground that a *bona fide* husband-and-wife relationship did not exist between her and the beneficiary and that, therefore, the marriage could not serve as a basis for the proper issuance of a nonquota immigrant visa. On July 14, 1961, the District Director, Los Angeles District, notified the petitioner that approval of the visa petition was revoked. On appeal to this Board it was found that the evidence clearly established that the marriage of the parties was not consummated; that the proposed beneficiary had never resided with the petitioner as man and wife; that the petitioner, in an affidavit executed on December 14, 1960, stated that she married the beneficiary at the request of his aunt so that he could remain in the United States. The Board order concluded that there had never been a valid *bona fide* marriage between the petitioner and the proposed beneficiary; that he could not qualify for nonquota status; and that the marriage contracted between them could not serve as a basis for the issuance of a nonquota immigrant visa. The file also discloses that the beneficiary's application for adjustment of status as a permanent resident pursuant to section 245 of the Immigration and Nationality Act was denied by the District Director, Los Angeles District, on November 22, 1961, for the reason that an immigrant visa was not presently available to the beneficiary and his appeal to the Regional Commissioner, San Pedro Region, was dismissed on December 14, 1961.

The District Director's denial of the visa petition does not set forth the provisions of the law which prohibit the approval of the petition under the circumstances in this case, but such denial must necessarily be predicated upon section 205(c) of the Immigration and Nationality Act, as amended by section 10 of the Act of September 26, 1961, Public Law 87-301, which provides, in part:

Notwithstanding the provisions of this subsection, no petition shall be approved if the alien previously has been accorded, by reason of marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws—

(1) a nonquota status under section 101(a)(27)(A) as the spouse of a citizen of the United States. . .

This provision of law embodies a two-pronged requirement: (1) that the alien previously have been accorded a nonquota status under section 101(a)(27)(A) as the spouse of United States citizen; and (2) that the marriage, upon which the status was accorded, was entered into for the purpose of evading the immigration laws. Both requirements must be established.

Counsel, in his brief, raises this question of whether the beneficiary has been accorded a nonquota status when a prior petition has been revoked. He argues that the very revocation acts *nunc pro tunc* to wipe out any possible benefit that the proposed beneficiary of the prior petition could have had; that the revocation meant that the proposed beneficiary did not receive any benefit under the immigration laws by virtue of his prior marriage; that he did not secure any change of status, or any status from that marriage; that he never acquired permanent residence in the United States because of a nonquota status based on his first marriage.

The issue raised is whether this alien previously has been accorded nonquota (or third preference quota) status only when he has obtained a change or adjustment of status or has acquired permanent residence upon the basis of the sham marriage, or whether he was accorded such status when the visa petition was approved.

The legislative history concerning the various bills [1] which finally evolved as S. 2237 was enacted as P. L. 87–301 on September 26, 1961, sheds very little clarification on this point. In his comments on H.R. 6300, Congressman Walter explained that section 8(c) (which contained the same language as embodied in section 10 of P. L. 87–301) proposed to strengthen the existing law by giving the Attorney General a new legal instrumentality to counteract the increasing number of fraudulent acquisitions of nonquota status through false marriages between aliens and United States citizens, often prearranged by racketeers; that the Attorney General had recently reported to the Congress about the increasing number of such sham marriages indicating the existence of marriage schemers operating in various parts of the country, particularly on the water front, and arranging for high fees for deceitful marriages involving, in most instances, alien seamen.[2] This statement appears almost without change in the House Report to accompany S. 2237 which was enacted into P. L. 87–301.[3] Senator Eastland stated that section 10 of the bill was designed to strengthen the provisions of the Immi-

---

[1] S. 1809, H.R. 6671 and H.R. 6300, 87th Congress, 1st Session.

[2] Congressional Record—House (daily ed. April 13, 1961), p. 5376.

[3] H.R. 1086 (87th Congress, 1st Session), pages 36–37; 2 U.S. Code Congressional and Administrative News (87th Congress, 1st Session, 1901), p. 2980.

gration and Nationality Act with respect to the exclusion from entry of those aliens who have entered into the fraudulent marriages for the purpose of evading the law.[4]

The legislative history is helpful only to the extent that it expresses dissatisfaction with the provisions of existing law [5] regarding aliens who have entered into fraudulent marriages for the purpose of evading the immigration law. It is noteworthy that section 10 of the Act of September 26, 1961, was enacted as an amendment to section 205(c), and that section 205 of the Immigration and Nationality Act is entitled "Procedure for Granting Nonquota Status or Preference by Reason of Relationship." [6] The pertinent regulations, 8 CFR 205.1 and also 8 CFR 299.1, provide that a petition to accord nonquota status under section 101(a)(27)(A) of the Act or quota immigrant status under section 203(a)(3) of the Act shall be filed on a Form I-130. By reference, the prescribed form becomes a part of the regulations. This Form I-130, which is entitled "Petition to Classify Status of Aliens for Issuance of Immigrant Visa" provides for the Secretary of State to be informed, in the case of approval of the visa petition by the District Director, that nonquota status or third preference quota status is granted. Section 205(c) provides that the Secretary of State shall then authorize the consular officer to grant the nonquota or preference as the case may be.

From the foregoing, it is concluded that the nonquota status or third preference quota status has been conferred upon the beneficiary when the Form I-130 has been approved by the District Director. It would appear to be unimportant that such status may subsequently be revoked under the provisions of section 206 of the Immigration and Nationality Act or that the beneficiary may be found deportable in an exclusion or deportation proceeding on the basis of a sham or fraudulent marriage. It is concluded that when the previous petition filed by the beneficiary's prior spouse was approved for nonquota status on March 15, 1958, he was at that time accorded nonquota status under section 101(a)(27)(A) as the spouse of a United States citizen. The first requirement of the amendatory section 10 of Public Law 87-301 is met.

We have previously outlined above the evidence which led to the revocation of the previously-approved visa petition by the District Director, Los Angeles District, on July 14, 1961, the appeal being dismissed on October 13, 1961, by this Board on the ground that there had never been a valid *bona fide* marriage between the parties. This prior adjudication constitutes a determination that the marriage was a sham, entered into to accord the beneficiary nonquota

[4] 107 Congressional Record—Senate (daily ed. September 15, 1961), p. 18466.

[5] Presumably, section 212(a)(19) and section 241(c) of the Immigration and Nationality Act.

[6] 8 U.S.C.A. 1155.

status for the purpose of evading the immigration laws. The second requirement of section 10 of Public Law 87-301 is also satisfied. The prohibition of section 205(c) of the Act, as amended by section 10 of the Act of September 26, 1961, applies to the instant petition. The appeal will be dismissed.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.

### Thomas J. Griffin, Member, Dissenting:

The undersigned hereby dissents from the opinion of the majority.

The facts have been adequately stated in the opinion of the majority and the sole issue upon which the undersigned dissents involves the construction of section 205(c) of the Immigration and Nationality Act, as amended by 75 Stat. 650 (Sept. 26, 1961).

The majority has held that under section 205(c) the beneficiary herein had been accorded a nonquota status immediately upon the approval of his first wife's petition in his behalf. Counsel for the petitioner contended on appeal that a status could not be accorded the beneficiary of a petition solely upon the basis of that petition having been approved. Section 205(c) in pertinent part states as follows:

After an investigation of the facts in each case the Attorney General shall . . . approve the petition and forward one copy thereof to the Department of State. . . The Secretary of State shall then authorize the *consular officer* concerned *to grant the nonquota immigrant status, quota immigrant status, or preference, as the case may be.* Notwithstanding the provisions of this subsection, no petition *shall be approved* if the alien previously has been *accorded*, by reason of marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws—

(1) a nonquota status under section 101(a)(27)(A) as the spouse of a citizen of the United States, or

(2) a preference quota status under section 203(a)(3) as the spouse of an alien lawfully admitted for permanent residence. (Emphasis supplied.)

The above-cited section here in issue clearly states that the nonquota immigrant status, quota immigrant status, or preference is to be *granted* by the consular officer concerned upon authorization by the Secretary of State. There is no indication that the status can be granted by any other person. The section clearly makes a distinction between the approval of a petition and the granting of a status pursuant to such approval. However, the opinion of the majority apparently attempts to equate eligibility for such status as indicated by the approval of the petition with the actual granting of such status. Furthermore, as indicated by the opinion of the majority, the legislative history concerning the background bills which finally evolved as Public Law 87-301 sheds little light as to the intention of the Congress on this particular aspect of the law. Concededly,

709

the Congress desired to discourage sham marriages entered into for the purpose of evading immigration laws. However, acceptance of the construction of the majority would place the beneficiary of a denied petition in a better position than the beneficiary of an approved petition despite the fact that both beneficiaries are equally guilty of being parties to a sham marriage to evade the immigration laws. It would appear that inasmuch as section 205(c) makes an obvious distinction between the approval of a petition and the granting of a status, then 205(c) (1 and 2) should not apply until the consular officer has granted the status in the form of the issuance of a visa. It is my position that approval of the petition is nothing more than a ministerial recognition of the eligibility for status and that such finding of eligibility cannot be a sufficient basis for the denial of an ensuant petition.

In summary, it is the position of the undersigned that section 205(c) clearly distinguishes between the approval of a petition and the granting of a status and that the mere approval of the petition (an *ex parte* procedure as to the alien beneficiary) is insufficient basis for the denial of a second petition.

**Robert E. Ludwig, Member, Dissenting:**

I concur in the dissent of Board Member, Thomas J. Griffin.